E. P. CARVER *v.* CITY OF CHARLESTON *et al.*

(No. 7463)

*and*

W. L. MEDLEY *v.* CITY OF CHARLESTON *et al.*

(No. 7464)

Submitted January 25, 1933. Decided March 28, 1933.

*Silverstein & Silverstein*, for relators.
*Charles Ritchie* and *Philip H. Hill*, for respondents.

LITZ, JUDGE:

Each of the relators, E. P. Carver and W. L. Medley, by separate petitions, seek a peremptory writ of mandamus commanding the respondents, City of Charleston, a municipal corporation, R. P. Devan, Mayor, H. C. Walker, Manager, Emmett Silman, Auditor, and J. D. Price, Treasurer, thereof, to pay each of them a semi-monthly installment of his salary as municipal court clerk and street commissioner, respectively, of said municipality.

The controversy involves the validity of an act of the 1932 Special Session of the Legislature, known as Senate Bill No. 47, reducing the salaries or wages of all public officials and employees in excess of $1200.00 and not more than $2,000.00, ten per centum; in excess of $2,000.00 and not more than $3,000.00, fifteen per centum; and in excess of $3,000.00, twenty per centum.

The act is assailed on the ground that it is not within the proclamation of the governor calling the Legislature into Special Session, and, therefore, violates section 7, Article VII of the State Constitution, limiting the action of the Legislature, in special session, to the "business * * * stated in the proclamation *by which it was called together.*"

"The revision of salaries paid all public officials now fixed or authorized by general or special statute", is the third item stated in the original proclamation. After the assembling of the Legislature, the governor undertook to "broaden" this item of his call by including the revision of compensation paid all public agents and employees, and the compensation received by every other person from public funds. The relator, Carver, being a public official whose office is created and salary authorized by section 5 of the municipal charter (a "special statute"), the act in so far as it affects him is within the letter of the original call. Medley, however, is a mere employee whose position is not provided for in the charter. Assuming that the proclamation could not have been legally amended after the meeting of the Legislature, does it in its original form authorize legislation reducing salaries of public employees? The original call contains eleven items of business as follows:

"*First*: An enabling statute to authorize the receivers of closed banks to negotiate loans from the Reconstruction Finance Corporation or other source for distribution among the creditors and stockholders of said banks.

"*Second*: The amendment of Section 4, Article 10, Chapter 11 of the Official Code, relating to the time of publication of delinquent tax lists and the time of making sale by the sheriff of delinquent lands, and an amendment of Section 30, Article 10, Chapter 11 of said Code, extending the time of forfeiture of the 1929 and 1930 delinquent lands and delinquent lands for subsequent years.

"*Third*: The revision of salaries paid all public officials now fixed or authorized by general or special statute.

"*Fourth*: The revision of fees or compensation allowed for keeping and feeding prisoners, other than federal prisoners or prisoners under civil process, as now provided by Section 12, Article 7, Chapter 7, Official Code of West Virginia, and the revision of fees now fixed by general or special statute where any public official is paid fees as part of his compensation.

"*Fifth*: A bill authorizing semi-annual or quarterly payment of all property taxes levied by the state and its subdivisions.

"*Sixth*: The re-enactment and/or modification of Chapter 64 and Chapter 65 of the Acts of the Legislature of West Virginia of 1931, which authorize municipalities and county courts to transfer money from certain funds for the relief of unemployment.

"*Seventh*: An enabling act authorizing municipalities, county courts and the State of West Virginia to obtain the benefit of any relief for unemployment or other purposes that has been or may be provided by the Congress of the United States.

"*Eighth*: An emergency revenue measure to balance the state budget, and to raise an additional sum of five hundred thousand dollars, or such part thereof as may be deemed proper, to be applied to the relief of unemployment over a specified period, and to pay the expenses of this session, such revenue to be raised by indirect taxation by a special tax on cigarettes

and/or other forms of tobacco and other luxuries, no part of the revenue for such purposes to be raised by a direct property tax.

"*Ninth*: A statutory limitation of levies to become effective from passage and to apply to the levies of 1932.

"*Tenth*: An amendment of Section 1, of Article X of the Constitution of West Virginia, relating to taxation, so as to provide for a constitutional limitation of levies, and the necessary legislative action to submit the same to the voters at the general election of 1932.

"*Eleventh*: To make the necessary appropriations of public monies to pay the expenses of this extraordinary session; to provide for the relief of unemployment as provided in *Eighth* above, on condition, however, that the revenue for such purpose is provided for at this extraordinary session; and to pay for the expenses of submitting to a vote of the people any constitutional amendment or amendments that may be authorized at this extraordinary session."

A consideration of the foregoing as an entirety, reveals the fact of an economic emergency calling for reduction in the costs of government. The enactment of legislation to meet this emergency is necessarily comprehended within the broad scope of the call.

We held in *State Road Commission* v. *West Virginia Bridge Commission,* decided this term, that the Legislature in effecting the purpose disclosed by the proclamation of balancing the budget was not limited to the enactment of an emergency revenue measure as stated in the call, but was at liberty, in accomplishing the object, to reduce governmental costs to the extent of abolishing public offices. Accordingly, we are of opinion, in this case, that the Legislature, in reducing the costs of government, was not confined to a revision of the salaries of public officials, but could also reduce the salaries or wages of public employees.

The writs are, therefore, refused.

*Writs refused.*